UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIBANK, N.A., *and* CITIBANK, N.A., *as Administrative Agent and Collateral Agent*,

      Plaintiff,

– *against* –

DOUGLAS JACOBSEN *and* NORMAN J. KRAVETZ,

      Defendants.

**OPINION AND ORDER**

19 Civ. 959 (ER)

Ramos, D.J.:

  Plaintiff Citibank, N.A. initiated this action on January 31, 2019. In brief, this case concerns Citibank's attempts to recover loan payments defendants Douglas Jacobsen and Norman Kravetz are alleged to have guaranteed. Doc. 19. In its operative complaint, Citibank brings claims for breach of contract and attorney's fees against Defendants. *Id.* Pending before the Court is Citibank's motion for summary judgment on both of these claims and Defendants' affirmative defenses. Doc. 49.

  For the reasons set forth below, Citibank's motion for summary judgment is GRANTED.

**I. BACKGROUND**

 **A. Factual Background**

  The following facts are undisputed. Citibank, in each of its respective capacities, is a national banking association. Doc. 57 ¶ 1. Jacobsen and Kravetz are co-founders of non-party JH Capital Group Holdings, LLC ("Parent"). *Id.* ¶ 2; Doc. 56 at 7; Doc. 58-1 at 35–36. Jacobsen is the sole member of non-party Jacobsen Credit Holdings LLC, which in turn is the sole member of Parent, which in turn is the sole member of non-party JHCG Holdings LLC ("Borrower"), which in turn is the sole member of non-party JH Portfolio Debt Equities LLC ("Servicer"). Doc. 57 ¶¶ 4–6; Doc. 58-1 at 188. Until 2019,

Parent, Borrower, and Servicer were in the business of purchasing portfolios of consumer and merchant loan obligations at a discount and deploying a network of collection agencies to recover amounts due on accounts.  *Id.* ¶ 7.

On June 29, 2017, Borrower and Parent entered into a Credit Agreement with Citibank.  *Id.* ¶ 8; Doc. 51-1 at 2.  The Credit Agreement identifies Citibank as a lender, administrative agent, and collateral agent for purposes of the agreement.  Doc. 51-1 at 5, 7, 12.  Pursuant to section 2.01 of the Credit Agreement, Citibank advanced a $50 million loan to Borrower.  *Id.* at 21; Doc. 57 ¶ 15.  The Credit Agreement also cross-references other "Loan Documents," which is defined to include the Security Agreement executed between Borrower and Citibank on the same date.  Doc. 51-1 at 13; Doc. 51-2 at 2; Doc. 57 ¶¶ 14, 16.

On December 28, 2017, Borrower and Parent executed an amendment to the Credit Agreement (the "First Amendment") with Citibank.  Doc 51-3 at 2; Doc. 57 ¶ 20.  As consideration for Citibank entering into the First Amendment, Defendants each executed a limited indemnity guaranty (the "Guaranties").  Doc. 51-4 at 2; 51-5 at 2; Doc. 57 at ¶ 21.  Section 2 of each of the Guaranties provides that Defendants "absolutely, irrevocably[,] and unconditionally guarantee[] for the benefit of [Citibank] (a) the due and punctual payment and performance of the Guaranteed Obligations . . . upon the occurrence of a Guaranty Trigger Event."  Doc. 51-4 at 4; Doc. 51-5 at 4; Doc. 57 at ¶ 22.  Each of the Guaranties defines "Guaranteed Obligations" as, "collectively, (a) all Obligations of Borrower to [Citibank] under the Credit Agreement and other Loan Documents, and (b) all Originator Receivables Obligations."  Doc. 51-4 at 2; Doc. 51-5 at 2; Doc. 57 at ¶ 22.

Each of the Guaranties also defines "Guaranty Trigger Event," which includes, among other things:

> (iii) fraud or intentional misrepresentation by any officer, employee, agent
> or representative of the Borrower or its Affiliates in connection with the

> transactions contemplated by the Transaction Documents, or in respect of the Collateral or any Underlying Portfolio;
>
> . . . .
>
> (x) any violation by Borrower or Parent of Section 7.01(a), 7.01(u), 7.01(w), of Section 7.02 of the Credit Agreement;
>
> . . . .
>
> (xv) an Insolvency Event with respect to Borrower, [Defendants], the Servicer, any Senior Borrower[,] or any of their Affiliates[.]

Doc. 51-4 at 2–3; Doc. 51-5 at 2–3.  Additionally, the Guaranties provide that Defendants "shall pay or reimburse all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [Citibank] in connection with the protection, defense[,] or enforcement of [the Guaranties] in any litigation or bankruptcy or insolvency proceedings."  Doc. 51-4 at 8; Doc. 51-5 at 8.  Further, the Guaranties state that Defendants "waive[] any and all defenses, claims, setoffs[,] and discharges of the Borrower, or any other obligor, pertaining to the Guaranteed Obligations."  Doc. 51-4 at 7; Doc. 51-5 at 7.

The Guaranties do not define what constitutes an "Insolvency Event."  Under the Credit Agreement, though, an "Insolvency Event" occurs when a person or entity is "unable to pay its debts generally as they become due" under the agreement.  Doc. 51-1 at 11.  Further, according to the Credit Agreement, Borrower and Parent are obligated to pay back Citibank the outstanding principal balance of the $50 million loan, plus accrued interest, on the maturity date, *id.* at 59, which at the latest would occur on June 29, 2018, *see id.* at 14, 19.

However, Borrower and Parent failed to pay back the loan by the maturity date.  Doc. 57 ¶¶ 44–45.  On September 12, 2018, Citibank served a demand letter on Defendants, *id.* ¶ 47, demanding that Defendants immediately pay all amounts outstanding with respect to the Guaranteed Obligations, Doc. 51 ¶ 14.  Citibank sent follow-up demand letters to Defendants on October 9, 2018 and December 4, 2018.  *Id.* ¶ 16; Doc. 57 ¶ 48.  To date, neither Borrower nor Parent nor Defendants have made any

payments towards the principal balance of the loan owed to Citibank under the Credit Agreement.

### B. Procedural History

Citibank filed suit on January 31, 2019, asserting claims for breach of contract, attorney's fees, and unjust enrichment.[1]  Doc. 1.  Specifically, Citibank sought payment from Defendants, as guarantors, for the principal sum of $50 million, plus accrued interest, under the Credit Agreement, in addition to attorney's fees and costs.  *See id.* Defendants filed a motion to dismiss the original complaint on April 1, 2019.  Doc. 17. In response, Citibank filed its Amended Complaint on April 15, 2019, retaining the same claims as in the original complaint.  Doc. 19.

Defendants filed a motion to dismiss the Amended Complaint on May 15, 2019. Doc. 22.  That motion was referred to the Honorable James L. Cott on November 14, 2019.  Doc. 32.  On February 18, 2020, Judge Cott issued his Report and Recommendation.  Doc. 35.  After the parties filed their objections, Docs. 36 and 37, the Court adopted in part and modified in part Judge Cott's Report and Recommendation, granting Defendants' motion to dismiss as to Citibank's claim for unjust enrichment but denying the motion as to its other claims, Doc. 39.

Following a pre-motion conference, the Court granted Citibank leave on June 25, 2020 to file the instant motion for summary judgment.  Citibank filed its motion on July 17, 2020, seeking summary judgment on its remaining claims for breach of contract and attorney's fees, as well as on Defendants' affirmative defenses.  Doc. 49.

---

[1] This case was originally assigned to the Honorable Deborah A. Batts.  It was reassigned to the undersigned on February 20, 2020, after Judge Batts passed away.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation under the governing law. *H.Daya Int'l Co., Ltd. v. Arazi*, 348 F. Supp. 3d 304, 308 (S.D.N.Y. 2018). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation mark omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brad v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "Only disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment." *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As such, to defeat a motion for summary judgment, "the non-moving party must set forth

5

significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).

Citibank asserts two claims under New York law.[2]  The Court grants summary judgment on both.

### B. Breach of Contract Claim

"A guaranty is a promise to fulfill the obligations of another party, and is subject to 'the ordinary principles of contract construction.'" *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d 80, 85 (N.Y. 2015) (quoting *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (Compagnie I)*, 188 F.3d 31, 34 (2d Cir. 1999)).  Under New York law, to meet its prima facie burden on summary judgment, Citibank "must prove the existence of the guaranty, the underlying debt[,] and the guarantor's failure to perform under the guaranty." *Id.* at 84 (quotation omitted).  "[T]he initial question for the court on a motion for summary judgment with respect to a contract claim"—including a claim regarding a guaranty—"is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (Compagnie II)*, 232 F.3d 153, 157 (2d Cir. 2000).  As to that question, the Court must determine whether Defendants failed to perform under the Guaranties by not paying the outstanding loan to Citibank.  *See Cooperatieve Centrale*, 36 N.E.3d at 85.

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie II*, 232 F.3d at 157.  "The question

---

[2] The parties agree, and this Court assumes, that New York law governs Citibank's substantive claims. *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010).

6

of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Id.* at 158. "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 950 N.Y.S.2d 8, 11 (N.Y. App. Div. 2012) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)). Conversely, a contract is ambiguous where its language is susceptible to multiple reasonable interpretations. *Brad H. v. City of New York*, 951 N.E.2d 743, 746 (N.Y. 2011). If a contract is ambiguous, and determination of the intent of the parties then "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such a determination is to be made by the jury," and the Court cannot grant summary judgment. *First Mercury Ins. Co. v. 613 N.Y. Inc.*, 609 F. App'x 664, 666 (2d Cir. 2015) (summary order) (quoting *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973)).

"The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie II*, 232 F.3d at 157. Under New York law, "a contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself." *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (quoting *MHR Cap. Partners LP v. Presstek, Inc.*, 912 N.E.2d 43, 47 (N.Y. 2009)). As such, "a written agreement that is complete, clear[,] and unambiguous on its face must be [construed] according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002); *Cooperatieve Centrale*, 36 N.E.3d at 85 (noting same for guaranties). Indeed, "when interpreting a contract, '[w]ords and phrases are to be given their plain and ordinary meaning, and New York courts will commonly refer to dictionary definitions in order to determine that meaning.'" *BOKF, N.A. v. Caesars Entm't Corp.*, 162 F. Supp. 3d 243, 246 n.5 (S.D.N.Y. 2016) (quoting

7

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014)); *see also Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 81 (N.Y. 2015) (relying on dictionary to determine "common definition" of terms in a rider). Accordingly, "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous." *Greenfield*, 780 N.E.2d at 170.

Consistent with the focus on a contract's language, "[a]mbiguity is determined by looking within the four corners of the document, not to outside sources[.]" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998)). Further, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a reasonable interpretation." *Law Debenture*, 595 F.3d at 467 (quotations omitted). As such, a court should not find ambiguity where "the interpretation urged by one party would 'strain the contract language beyond its reasonable and ordinary meaning.'" *Id.* (alteration omitted) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957)).

Here, there is no dispute about the existence of the guaranty or adequate performance by Citibank. Nor are there any material factual questions regarding the underlying debt: it is undisputed that Borrower and Parent failed to pay back the principal balance by the Credit Agreement's maturity date, and that Defendants did not pay that balance to Citibank following its demand letters. Further, the Court has previously concluded, and the parties do not contest here, that the Borrower's failure to repay the loan by the maturity date constitutes a "Guaranty Trigger Event" pursuant to the Guaranties. Doc. 39; *see also* Doc. 35. Because a "Guaranty Trigger Event" occurred, there is no question that Defendants were required to pay their "Guaranteed Obligations" pursuant to the Guaranties. Doc. 51-4 at 4; Doc. 51-5 at 4; Doc. 57 at ¶ 22. Rather, the

8

sole issue regarding this claim is whether Defendants breached the terms of the Guaranties by not paying the $50 million balance owed to Citibank.

Put another way, for the purpose of summary judgment on this claim, the Court must determine whether the Guaranties unambiguously indicate that repayment of the $50 million loan constitutes one of Defendants' "Guaranteed Obligations" under the Guaranties. Resolving this issue turns on the language of the contractual framework. *See Luitpold Pharms., Inc.*, 784 F.3d at 87. Again, the Guaranties define "Guaranteed Obligations" as "collectively, (a) all Obligations of Borrower to [Citibank] under the Credit Agreement and other Loan Documents, and (b) all Originator Receivables Obligations." Doc. 51-4 at 2; Doc. 51-5 at 2; Doc. 57 ¶ 22. Although the Guaranties do not define the term "Obligations," they note that, "[u]nless otherwise defined in [the Guaranties], all defined terms . . . shall have the meanings ascribed to such terms in the Credit Agreement." Doc. 51-4 at 2; Doc. 51-5 at 2. According to the Credit Agreement, the term "'Obligations' has the meaning assigned to such term in the Security Agreement." Doc. 51-1 at 14. The Security Agreement, however, provides no definition for the term. *See* Doc. 51-2. Thus, the term "Obligations" is not defined under the contractual framework.

Citibank argues that, under this contractual framework, the Guaranties unambiguously guaranty repayment of the $50 million loan. According to Citibank, Borrower's obligation to pay back the loan constitutes one of the "Guaranteed Obligations" under the plain language of the Guaranties, Credit Agreement, and Security Agreement, and its brief relies largely on Judge Cott's analysis in his Report and Recommendation. *See* Doc. 35.

In response, Defendants contend that the Guaranties do not unambiguously guaranty repayment of the loan. Defendants first argue that the Guaranties unambiguously *exclude* the repayment of the loan from the meaning of "Guaranteed Obligations," noting that the term "Obligations" within the term "Guaranteed

9

Obligations" is not explicitly defined to include loan repayment.³  At a minimum, Defendants argue, that lack of a definition within the contractual framework renders the term "Guaranteed Obligations" ambiguous, thereby precluding summary judgment. Further, Defendants contend that the Guaranties—along with the rest of the contractual framework—distinguish between "obligations" and "Obligations," using the former to refer to all of Borrower's payment responsibilities and the latter to refer to a narrower set of responsibilities of which the repayment of the $50 million loan is not a part. Additionally, Defendants argue that the Guaranties' definition of "Originator Receivables Obligations"—a term that is included within the definition of "Guaranteed Obligations"—suggests a narrower understanding of what responsibilities Defendants guaranteed.

The Court agrees with Citibank.  Defendants largely repeat the same arguments regarding the interpretation of the term "Obligations" from their motion to dismiss; as the Court noted in its order regarding that motion, Defendants' proposed interpretation is, at best, strained.  Doc. 39 at 11–12.  Again, the term "Obligations" is an undefined term within the contractual framework, and as such, the Court interprets "Obligations" according to its plain and ordinary meaning, relying on dictionary definitions to determine that meaning.  *See Universal Am. Corp.*, 37 N.E.3d at 81; *Greenfield*, 780 N.E.2d at 170; *see also BOKF, N.A.*, 162 F. Supp. 3d at 246 n.5.  According to that plain and ordinary meaning, "Obligation" means a "formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons," especially "a duty arising by contract."  *Obligation*,

---

³ The Court has already concluded that the Guaranties do not unambiguously exclude loan repayment from the definition of "Obligations" under the contractual framework.  Doc. 39 at 12–13.  As such, the law of the case doctrine commands that the Court adhere to that ruling.  *Perreca v. Gluck*, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003).  Thus, to the extent that Defendants argue that summary judgment is barred because the Guaranties unambiguously exclude the loan repayment from the meaning of "Obligations," that argument is unavailing.

Black's Law Dictionary (11th ed. 2019).  Further, the Guaranties specify not just that some but "*all* Obligations of Borrower to [Citibank] under the Credit Agreement and other Loan Documents" constitute "Guaranteed Obligations," thereby emphasizing the breadth of the scope of responsibilities encompassed within this definition.  Doc. 51-4 at 2 (emphasis added); Doc. 51-5 at 2 (emphasis added).  Although Defendants suggest that the contractual framework distinguishes between "obligations"—with a lower-case "o"—and "Obligations—with an upper-case "O"—the Court concludes that there is no reason to distinguish the two terms, as both are undefined and, therefore, to be interpreted according to the same plain and ordinary meaning.  And while Defendants are correct that fewer responsibilities fall under the definition of "Originator Receivables Obligations" than do under the common understanding of "Obligations," that does not somehow narrow the definition of the latter term.  After all, "Originator Receivables Obligations" constitute only a subset of the "Guaranteed Obligations," and "all Obligations of Borrower to [Citibank] under the Credit Agreement and other Loan Documents" is listed as an independent subset under the definition of "Guaranteed Obligations."  Doc. 51-4 at 2 (emphasis added); Doc. 51-5 at 2 (emphasis added).

Thus, Borrower's responsibility to repay the $50 million loan to Citibank plainly qualifies as an "Obligation"—and in turn as a "Guaranteed Obligation."  As such, the Court concludes that the Guaranties require the "due and punctual payment" by Defendants of the loan balance "upon the occurrence of [the] Guaranty Trigger Event."  *See* Doc. 51-4 at 4; Doc. 51-5 at 4.

Defendants also argue that other portions of the contractual framework inject ambiguity into the meaning of key terms.  First, Defendants contend that the Credit Agreement's separately defined term "Secured Obligations"—which includes the repayment of the loan—suggests that the loan repayment, by not being explicitly mentioned in the definition of "Obligation," was excluded from that definition.  Second, Defendants argue that the meaning of "payments" (within the definition of "Guaranteed

11

Obligations") does not include the loan repayment to Citibank, as the Security Agreement—where the contractual framework points to for a definition of "Obligations"—lists some specific payment responsibilities, but fails to list the loan repayment as one of those responsibilities.

Of course, a court must interpret terms of a contract in the context of the entire agreement, *Law Debenture*, 595 F.3d at 466–67, including by considering agreements that are within the same contractual framework, *1471 Second Corp. v. NAT of NY Corp.*, 79 N.Y.S.3d 23, 24 (N.Y. App. Div. 2018). Still, Defendants' arguments on this point do not change the outcome in this case. First, although the Security Agreement outlines some specific "payment" responsibilities, the Court can think of no reason, and Defendants provide none, to consider these as restricting what constitutes the meaning of "payment" in other parts of the contractual framework; instead, they simply constitute a non-exhaustive list of responsibilities within the Security Agreement. Indeed, the Court must interpret the undefined term "payment" (within the definition of "Guaranteed Obligations") according to its plain and ordinary meaning, which would include the repayment of the loan. *See Universal Am. Corp.*, 37 N.E.3d at 81. Second, and as the Court has previously noted in its order on Defendants' motion to dismiss, the Credit Agreement's separate definition of "Secured Obligations" from "Obligations" does not change the Court's conclusion. Doc. 39 at 11–12. Regardless of whether repayment of the loan constitutes a "Secured Obligation," the plain and ordinary meaning of "Obligation" has a broader definition that allows for repayment of the loan to qualify under both definitions.

Defendants also attempt to refute this interpretation by relying on evidence outside of the language of the contractual framework. For instance, Defendants emphasize that, under New York law, courts must interpret guaranties *strictissimi juris*, meaning that courts must protect guaranties against liabilities that are not strictly within their terms. *Compagnie I*, 188 F.3d at 34. Through that lens, Defendants contend, the

12

term "Obligations" is ambiguous, thereby precluding summary judgment. Further, Defendants assert that their subjective understanding of the terms of the Guaranties excluded any personal guaranties of the repayment of the loan to Citibank. Doc. 59 ¶ 6; Doc. 60 ¶ 6. Defendants argue that their purported intent, along with the limited record due to Citibank moving for summary judgment before discovery has occurred, results in a fact issue that precludes summary judgment at this juncture and necessitates discovery under Federal Rule of Civil Procedure 56(d). Specifically, Defendants note that drafts of the Guaranties, details of the communications of the parties when negotiating the Guaranties, and information regarding the intentions of the parties during the negotiations would render the Guaranties ambiguous. Doc. 58 ¶¶ 2, 4–5.[4] And Defendants point to other documents outside the contractual framework that they argue support their purported intent, specifically referring the Court to the language in guaranties executed between Citibank and Parent in June 2017—six months prior to the Guaranties—and asserting that the language in those documents should inform the Court's interpretation of terms in the Guaranties.

However, Defendants' arguments about the need for extrinsic evidence are unavailing. Again, the plain language of the Guaranties resolves this issue, and the Court considers extrinsic evidence of the parties' intent only where that plain language yields ambiguity. *Greenfield*, 780 N.E.2d at 170–71. Accordingly, Defendants' proposed discovery requests are not "essential" to their opposition, *see* Fed. R. Civ. P. 56(d), as they are immaterial to the interpretation of the Guaranties, *see H.Daya Int'l Co., Ltd.*, 348 F. Supp. 3d at 308. Further, while New York courts must interpret guaranties in the strictest manner, the Guaranties are "not entitled to any particular tenderness in the

---

[4] Defendants also state that they intend to seek discovery regarding what steps, if any, Citibank took to mitigate damages. Doc. 58 ¶ 4. That information is immaterial to the interpretation of the terms of the Guaranties, and so plays no role in the Court's analysis on this issue. *See H.Daya Int'l Co., Ltd.*, 348 F. Supp. 3d at 308.

13

interpretation of [their] language" and must still be interpreted according to their "plain and explicit language." *See AXA Inv. Managers UK Ltd. v. Endeavor Cap. Mgmt. LLC*, 890 F. Supp. 2d 373, 385 (S.D.N.Y. 2012) (quoting *Compagnie I*, 188 F.3d at 34). Indeed, the application of *strictissimi juris* applies "only after the meaning of the contract of guarantee has been determined according to the ordinary principles of contract construction." *Compagnie I*, 188 F.3d at 34 (quotation omitted).  And while Defendants correctly observe that "agreements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one," *1471 Second Corp.*, 79 N.Y.S.3d at 24, the Guaranties and the June 2017 guaranties occurred at neither the same time nor involved the same parties, and the latter involve Parent's—not Defendants'—obligations regarding the loan.  As such, the language of the June 2017 guaranties does not inform the meaning of the Guaranties. Thus, because the plain language of the Guaranties unambiguously obligates Defendants to repay the loan to Citibank, and Defendants have failed to do so, Citibank is entitled to summary judgment on its claim for breach of contract.

### C. Claim for Attorney's Fees

Citibank also moves for summary judgment on its claim for attorney's fees.  As noted, the Guaranties state that Defendants "shall pay or reimburse all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [Citibank] in connection with the protection, defense[,] or enforcement of [the Guaranties] in any litigation." Doc. 51-4 at 8; Doc. 51-5 at 8.  The plain language of the Guaranties thus entitles Citibank to attorney's fees and costs where Citibank brings suit to enforce the Guaranties in the event of a breach.  Defendants do not dispute that interpretation; instead, they argue merely that Citibank is not entitled to attorney's fees and costs under the Guaranties because there was no breach.  However, because Defendants breached the Guaranties by failing to pay the outstanding balance of the $50 million loan, and Citibank in turn brought this suit to enforce the terms of the Guaranties,

the Court concludes that Citibank is entitled to attorney's fees and costs in connection with the instant litigation.

### D. Defendants' Waiver of Defenses

Citibank moves for summary judgment on the affirmative defenses raised by Defendants, arguing that Defendants waived any defenses under the Guaranties. The Guaranties provide that Defendants "absolutely, irrevocably[,] and unconditionally guarantee[]" payment regarding the "Guaranteed Obligations." Doc. 51-4 at 4; Doc. 51-5 at 4. The Guaranties in turn state that Defendants "waive[] any and all defenses, claims, setoffs[,] and discharges of the Borrower, or any other obligor, pertaining to the Guaranteed Obligations." Doc. 51-4 at 7; Doc. 51-5 at 7. Citibank argues that this language constitutes an express waiver of all defenses in connection with the enforcement of the Guaranties, as Defendants qualify as "other obligor[s]" for whom all defenses are waived. *See* Doc. 51-4 at 7; Doc. 51-5 at 7. Defendants disagree, arguing that the waiver applies to only defenses of Borrower and obligors who are not Defendants—such as defenses concerning Borrower's performance of the underlying "Guaranteed Obligations." Thus, Defendants contend, the waiver does not apply to any defenses belonging to them, including those relating to the formation, enforceability, and interpretation of the Guaranties.

The Court agrees with Citibank. "Guaranties that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guaranties that are 'absolute and unconditional,' have been consistently upheld by New York courts." *Cooperatieve Centrale*, 36 N.E.3d at 85. "Absolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses." *Id.* (quoting *Compagnie I*, 188 F.3d at 35). By their plain language, the Guaranties are absolute and unconditional, *see id.* at 86, waiving any and all defenses pertaining to the Guaranteed Obligations of not only Borrower but "any other obligor," Doc. 51-4 at 4, 7; Doc. 51-5 at 4, 7. And as individuals "who [have] undertaken an

15

obligation" under the Guaranties, Defendants constitute "obligors" under the common and ordinary understanding of the word. *Obligor*, Black's Law Dictionary (11th ed. 2019). The context of the Guaranties confirms this interpretation, *see Law Debenture*, 595 F.3d at 466–67, as the Guaranties also note that "[t]he obligations of [Defendants] are undertaken as *primary obligor*," Doc. 51-4 at 7 (emphasis added); Doc. 51-5 at 7 (emphasis added). Thus, as obligors, Defendants waived their defenses that pertained to the Guaranteed Obligations in their capacity as guarantors. *See Cooperatieve Centrale*, 36 N.E.3d at 86. Accordingly, because Defendants have waived those defenses, Citibank is entitled to summary judgment, and those defenses must be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Citibank's motion for summary judgment is GRANTED. Citibank is directed to file its application for attorney's fees and costs by December 22, 2020, and Defendants are directed to file any opposition by January 12, 2021. Defendants' requests for oral argument on this motion and discovery pursuant to Rule 56(d) are hereby denied as moot. Docs. 56 and 61. The Clerk of Court is respectfully directed to terminate the motion. Doc. 49.

It is SO ORDERED.

Dated:   December 1, 2020
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.